KRISTIN N. REYNA DEHART (SBN 211075)
kreyna@grsm.com
MATTHEW P. NUGENT (SBN: 214844)
mnugent@grsm.com
TIMOTHY A. HANNA (SBN: 310620)
thanna@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7760
Facsimile: (619) 696-7124

Attorneys for Defendants/Counterclaimants
SAN DIEGO FAMILY HOUSING LLC (DOE 1) AND LINCOLN MILITARY PROPERTY MANAGEMENT LP (DOE 2)

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAINT BROWN, an individual and CHRISTINE BROWN, an individual<br><br>Plaintiffs/ Counterdefendants,<br><br>vs.<br><br>SAN DIEGO FAMILY HOUSING, LLC; LINCOLN MILITARY PROPERTY MANAGEMENT LP; and DOES 1 to 50, inclusive,<br><br>Defendants/Counterclaimants. | CASE NO. 3:23-cv-00567-JES-DDL<br><br>**DEFENDANTS SAN DIEGO FAMILY HOUSING LLC AND LINCOLN MILITARY PROPERTY MANAGEMENT LP'S COUNTERCLAIM AGAINST PLAINTIFFS SAINT BROWN AND CHRISTINE BROWN** |

Defendants and Counterclaimants SAN DIEGO FAMILY HOUSING LLC and LINCOLN MILITARY PROPERTY MANAGEMENT LP ("Counterclaimants") hereby bring this Counterclaim against Plaintiffs/Counterdefendants SAINT BROWN and CHRISTINE BROWN ("Counterdefendants"), and allege as follows:

## I.

## INTRODUCTION AND PARTIES

1. Counterclaimant SAN DIEGO FAMILY HOUSING, LLC ("SDFH") is at all times mentioned herein a California limited liability company which does business in San Diego County, California. At all times relevant herein, SDFH was

1  the Ground Lessor from the United States Navy ("Navy") and Lessor of certain
2  military housing located on base at Marine Corps Air Station Miramar
3  ("Miramar"), including housing in the Capeharts community at which
4  Plaintiffs/Counterdefendants leased the property at 1424 Orion Drive, San Diego,
5  California (the "Leased Property") from on or about June 2022 to February 2023.

6     2.   Counterclaimant LINCOLN MILITARY PROPERTY
7  MANAGEMENT LP ("LMPM") is at all times mentioned herein a Delaware
8  limited partnership, which does business in San Diego County, California. At all
9  times relevant herein, LMPM was the property manager of certain military housing
10 located on base at Miramar including the Capeharts community at which
11 Plaintiffs/Counterdefendants leased the Leased Property from on or about June
12 2022 to February 2023.

13    3.   Counterdefendant SAINT BROWN is at all times mentioned herein
14 an individual residing, on information and belief, in the County of San Diego, in
15 the State of California.  Counterdefendant resided at the Capeharts military
16 housing community at Camp Pendleton between June 2022 to February 2023,
17 specifically the Leased Property thereat, pursuant to a residential lease for such
18 housing between himself and Counterclaimant SDFH.

19    4.   Counterdefendant CHRISTINE BROWN is at all times mentioned
20 herein an individual residing, on information and belief, in the County of San
21 Diego, in the State of California.  Counterdefendant resided at the Capeharts
22 military housing community at Camp Pendleton between June 2022 to February
23 2023, specifically the Leased Property thereat, pursuant to a residential lease for
24 such housing between herself and Counterclaimant SDFH.

25    5.   An actual controversy has now arisen and now exists between
26 Counterclaimants and Counterdefendants concerning each party's respective rights
27 and duties in connection with the action brought by Plaintiffs, who claim injuries
28 and damages by Defendants/Counterclaimants relating to alleged mold, moisture

*Gordon Rees Scully Mansukhani, LLP*
*101 W. Broadway, Suite 2000*
*San Diego, CA 92101*

1  and/or sewage at the Leased Property during Plaintiffs/Counterdefendants' tenancy
2  thereat. For purposes of background and information, but without admitting the
3  truth therein as against these Counterclaimants, Plaintiffs' Complaint, [Dkt No. 1,
4  Ex. A] is incorporated herein by reference.

5       6.    In the event Counterclaimants are determined liable for any of
6  Plaintiffs'/Counterdefendants' alleged injuries or damages associated with the
7  Leased Property, or any other costs or damages, and/or attorney's fees, costs of suit
8  or prejudgment interest, Counterclaimants seek equitable indemnity and
9  contribution from Plaintiffs/Counterdefendants for such costs and amounts based
10 on her own actions in connection with the Leased Property.  Moreover,
11 Counterclaimants seek indemnity and additional damages as a result of
12 Plaintiffs'/Counterdefendants' breach of their residential Lease relating to the
13 alleged issues regarding mold and their actions at the Leased Property relating to
14 the same.

15      7.    Counterclaimants are informed and believe and thereon allege that at
16 all times mentioned herein, that Counterdefendants were legally responsible in
17 some manner for the events and happenings referred to herein and in Plaintiffs'
18 complaint, and thereby proximately caused her injuries and damages, if any.
19 Counterclaimants are informed and believe and thereon allege that the
20 Counterdefendants are required to indemnify Counterclaimants and/or owe
21 contribution as hereinafter set forth.  Counterclaimants also seek declaratory relief
22 in the form of a declaration of each party's rights, duties and obligations relating to
23 this matter.

## II.
## JURISDICTION AND VENUE

26      8.    This court has jurisdiction over this action as a federal question
27 pursuant to pursuant to 28 U.S.C. § 1331. This action was removable to this Court
28 on three independent bases: (1) pursuant to 28 U.S.C. § 1331, because the events

-3-
**DEFENDANTS' COUNTERCLAIM AGAINST PLAINTIFFS**

alleged in the Complaint occurred within a federal enclave; and (2) under 28 U.S.C. § 1442, because (a) then-Defendant Camp Pendleton & Quantico Housing, LLC qualifies as a federal agency for removal purposes, and Defendant San Diego Family Housing LLC qualifies as a federal agency for removal purposes; (b) at all relevant times then-Defendants Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM, LP were acting under a federal officer, and Defendants San Diego Family Housing LLC and Lincoln Military Property Management LP were acting under a federal officer. [Dkt No. 1].  This Court has jurisdiction over the state law claims as pendant, ancillary and supplemental pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper in that the Leased Property at issue where the actions at issue took place, lies within the Southern District of California.

10. This Counterclaim arises out of the same transaction and/or occurrence as the transaction and/or occurrence which is the subject of Plaintiffs' Complaint in the instant matter, and involves the same military housing and federal enclave, and Plaintiffs'/Counterdefendants' Lease of the Leased Property thereat. Plaintiffs allege that mold, moisture and/or sewage in the Leased Property caused their injuries and damages.  Defendants/Counterclaimants, in turn, allege that per her own allegations as even described in her Complaint, Plaintiffs/Counterdefendants accessed and tampered with sealed off portions of the Leased Property in violation of the Lease terms and Mold addendum thereto, re-entered the Leased Property during the remediation work thereon in violation of the Lease terms and Mold addendum thereto, and failed to timely report discovered mold at the Leased Property per the lease terms, causing and/or contributing to their own injuries and damages, and causing additional damages to Counterdefendants. Counterclaimants, accordingly, allege that Counterdefendants owe them contribution and/or indemnity, and/or additional damages, as herein set forth.
///

## III.

## GENERAL ALLEGATIONS

11. Counterclaimants re-allege paragraphs 1 through 10 inclusive, and by this reference incorporates them herein as though set forth in full.

12. On or about October 13, 2022, Counterdefendants reported to Counterclaimants water damage and a "mold smell" from the upstairs hallway bathroom at the Leased Property, and conveyed that there was "visible mold" under the sink and shower wall, and that "[t]he mold smell is so bad under the bathroom sink, that we've been unable to use the vanity since move in," thus indicating that this condition had been present for some time at the Leased Property. However, Counterdefendants had never, prior to on or about October 13, 2022, reported concerns about mold or moisture anywhere at the Leased Property, including in the upstairs hallway bathroom.

13. Counterclaimants investigated the upstairs hallway bathroom on or about October 13, 2022, and in response to Counterdefendants concerns, installed a "mold lock" around the upstairs hallway bathroom door, to seal off the room from Counterdefendants, so that they would not enter the room pending further investigation. Counterdefendants were told by Counterclaimants to not enter the upstairs hallway bathroom and to stay out of the room.

14. On or about October 15, 2022, on information and belief and based upon the allegations made in Plaintiffs' Complaint, Counterdefendant Christine Brown found mold in the master bathroom. However, Counterdefendants did not report this finding to Counterclaimants, until a full two days later, in violation of the provisions of the Lease and the Mold Addendum to the Lease.

15. On information and belief, and based on remarks made by Counterdefendant Christine Brown on or about October 21, 2022 to Counterclaimants, Counterdefendants, including Christine Brown, had broken the mold lock on the upstairs hallway bathroom and entered the bathroom at some

point, and/or at multiple points, between October 13, 2022 and October 24, 2022, in violation of what they had been told not to do by Counterclaimants, and in violation of the Mold Addendum to the Lease, which is incorporated in the Lease terms.  By so doing this, Counterdefendants exposed themselves to portions of the Leased Property that had not been remediated or repaired, without proper protective equipment.  On or about October 24, 2022, Counterclaimants, during an inspection of the Leased Property, saw that the mold lock seal on the upstairs hallway bathroom door had been broken and/or removed.

16. On or about October 17, 2022, Counterclaimants informed Counterdefendants that due to the issues in the upstairs hallway bathroom, and separate issues in the master bathroom, they would need to be relocated to temporary alternative housing so that the remediation and repairs to the Leased Property could be performed.  Counterdefendants, however, at first delayed their relocation to alternative lodging because they wanted to stay at an "Air BnB" instead of a hotel or family suite which Counterclaimants were arranging for them, and this took additional time to locate.  On or about October 21, 2022, on information and belief, Counterdefendants relocated to a hotel for a couple of nights and shortly thereafter, an Air BnB that they themselves located.  Counterdefendants were told and agreed with Counterclaimants to not access the Leased Property during the course of the repairs and remediation unless they first notified Counterclaimants of a need to access the unit, so that whether or not it was safe for Counterdefendants to enter the unit at that time could be evaluated.  Such agreement was not only oral, but memorialized in Counterdefendants' agreement to the terms of the Mold Addendum to the Lease Agreement at the time they executed the Lease for the Leased Property.  Counterclaimant SDFH bore the costs of relocating Counterdefendants during the repairs to the Leased Property and reimbursed them for the same, and further paid them a per diem stipend during the duration of the relocation.

17.  On information and belief, and based on the allegations made by Counterdefendants in their own Complaint in this matter and work orders submitted by Counterdefendants, Counterdefendants, on or about November 5, 2022, entered the Leased Property without permission of Counterclaimants, and without notifying Counterclaimants, and tampered with the items appurtenant to the remediation and repairs, which were not complete as of this time, prior to clearance for the Leased Property being received, and prior to being told they could return to the Leased Property.  Counterdefendants re-entered the Leased Property without permission of SDFH or its agent LMPM and in violation of the terms of the Mold Addendum to the Lease Agreement, which was incorporated into the Lease terms.  In so doing, on information and belief, Counterdefendants exposed themselves to the areas of the Leased Property still under remediation, construction and repair, without appropriate personal protective equipment.

18.  On information and belief, and based on the allegations made by Counterdefendants in their own Complaint in this matter and work orders submitted by Counterdefendants, Counterdefendants, on or about November 22, 2022, upon returning to the Leased Property following the remediation and repairs thereat, observed continued excessive moisture at and around the master bathroom bathtub, but did not report this condition to Counterclaimants until on or about December 2, 2022, almost two weeks later.

## IV.

## **FIRST CAUSE OF ACTION**

**(Breach of Lease)**

**(By Counterclaimant SDFH against Counterdefendants)**

19.  Counterclaimant SDFH re-alleges and incorporates herein by reference its allegations in Paragraphs 1 -18 above as if fully set forth herein.

20.  Counterdefendants knowingly and in bad faith breached material provisions of the Lease agreement(s) and other oral and/or written agreements

-7-
**DEFENDANTS' COUNTERCLAIM AGAINST PLAINTIFFS**

between them and Counterclaimants SDFH by (without limitation): (1) entering the sealed off upstairs hallway bathroom, sealed by Counterclaimant and its agent LMPM with a mold lock, at the Leased Property, on or about October 21, 2022 or at points between October 13, 2022 and October 24, 2022, after being told by Counterclaimant SDFH and/or its agent LMPM to not enter that room pending further investigation of Counterdefendants' mold and moisture concerns therein; such agreement was both oral and pursuant to the Mold Addendum to the Lease Agreement (a mandatory instruction for safety) which was incorporated into the Lease for the Leased Property; (2) entering the Leased Property on or about November 5, 2022, without permission of Counterclaimant SDFH or its agent LMPM, after agreeing with SDFH and LMPM to be relocated to alternative housing and to not enter the Leased Property without prior permission from SDFH and/or LMPM during the remediation and repair activities thereat for their own safety; such agreement was both oral and pursuant to the Mold Addendum to the Lease Agreement (a mandatory instruction for safety) which was incorporated into the Lease for the Leased Property; (3) failing to timely report their claims of mold in the upstairs hallway bathroom pursuant to the terms of the Lease Agreement, and the Mold Addendum to the Lease Agreement, which conditions they indicated had been present for some time, when they first reported it to SDFH and/or its agent LMPM on or about October 13, 2022; (4) failing to timely report their claims of mold in the master bathroom for at least two days, in violation of the terms of the Lease Agreement and the Mold Addendum thereto; (5) failing to timely report their observation of additional excessive moisture in the master bathroom following the remediation/repairs, for a period of almost two weeks, in violation of the terms of the Lease Agreement and the Mold Addendum thereto.

21. Counterclaimant SDFH has performed all conditions precedent to Counterdefendants' performance under the contract(s), written and/or oral.

///

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

22. At all material times alleged herein, the agreement(s) between Counterdefendants and Counterclaimant SDFH was (were) a valid, enforceable contract(s).

23. As a direct and proximate result of the foregoing breaches of contract, Counterclaimant SDFH has suffered significant damages, the full extent of which will be proven at trial, but which include, although are not limited to, costs of remediation and repair to the Leased Property incurred due to Counterdefendants' delay in reported claimed property conditions involving mold and moisture, and costs associated with Plaintiffs'/Counterdefendants lawsuit and claimed injuries herein, which were due at least in part to Counterdefendants' own actions or omissions as alleged herein.  Pursuant to the provisions of said written Lease Agreement contract, Counterclaimant SDFH is further entitled to recover its attorney's fees and costs in this litigation relating to these claims for Breach of Lease.

## V.
## SECOND CAUSE OF ACTION
**(Equitable Indemnity & Contribution)**

**(By Counterclaimants SDFH and LMPM against Counterdefendants)**

24. Counterclaimants re-allege paragraphs 1 through 23 inclusive, and by this reference incorporate them herein as though set forth in full.

25. On information and belief, Counterdefendants' actions with respect to the Leased Property, including violating mandatory instructions given to them under the Lease and the Mold Addendum thereto, including entry into sealed off areas of the Leased Property which they were instructed not to enter for their safety, and entry into the Leased Property during the remediation and repairs thereon without permission from Counterclaimants for their safety, and further, Counterdefendants' failure to timely report mold and moisture conditions on the Leased Property in violation of the Lease and the Mold Addendum thereto,

directly, proximately and/or causally caused and/or contributed to the damages as alleged in Plaintiffs' Complaint.

26. As such, while Defendants/Counterclaimants deny any liability to Plaintiffs/Counterdefendants, Counterclaimants are entitled to equitable indemnity and/or contribution from Counterdefendants, under State law, for any costs they incurs in responding to and/or reimbursing Plaintiffs for any alleged injury and damages they have sustained, in amounts to be determined at the trial of this matter.

## VI.
## THIRD CLAIM FOR RELIEF
### (Declaratory Relief)
### (By Counterclaimants SDFH and LMPM against Counterdefendants)

27. Counterclaimants re-allege paragraphs 1 through 26 inclusive, and by this reference incorporate them herein as though set forth in full.

28. An actual controversy has arisen and now exists between Counterclaimants and Counterdefendants, and each of them, concerning the parties' respective obligations and liabilities relating to Plaintiffs' claims and alleged damages and Counterclaimants' claims and alleged damages.

29. The essential facts giving rise to the controversy between Counterclaimants and Counterdefendants, and each of them, are set forth in the Counterclaim herein, and the operative Complaint, including, without limitation, that Counterdefendants, on information and belief, deny that they owe Counterclaimants equitable indemnity or contribution toward Plaintiff's damages, or damages for breach of lease, and that Counterclaimants allege that such indemnity and/or contribution is owed, and/or damages for breach of lease.

30. Unless all of the rights, duties and obligations of Counterclaimants and Counterdefendants, and each of them, are determined in this action, there will be a multiplicity of actions. Judicial determination of the liability of each party is

-10-
**DEFENDANTS' COUNTERCLAIM AGAINST PLAINTIFFS**

necessary and appropriate in order that Counterclaimants may ascertain their rights as against each Counterdefendant.

31. Counterclaimants, therefore, request a judicial determination of their rights, and the duties and obligations of Counterdefendants, and any others, with respect to the alleged the alleged damages of Plaintiffs. Counterclaimants further request that this Court apply all equitable factors and principles in determining the fault and liability of each party in making an allocation and apportionment for contributions by, between and among the parties.

WHEREFORE, Counterclaimants SDFH and LMPM pray for a trial by jury on all counts and relief as follows:

1. For compensatory damages in an amount according to proof at trial;
2. For special damages in an amount according to proof at trial;
3. For equitable indemnity and/or contribution from Counterdefendants for Plaintiffs' claimed damages;
4. For attorneys' fees and costs;
5. For such other and further relief as the Court deems just and proper.

Dated: April 21, 2023      GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ Kristin N. Reyna DeHart
Kristin N. Reyna DeHart
Matthew P. Nugent
Timothy A. Hanna
Attorneys for Defendants/Counterclaimants
SAN DIEGO FAMILY HOUSING LLC and LINCOLN MILITARY PROPERTY MANAGEMENT LP