1
2
3
4
5
6
7
8
9       UNITED STATES DISTRICT COURT
10      SOUTHERN DISTRICT OF CALIFORNIA
11

12  SAINT BROWN, et al.,                      Case No.:  3:23-cv-00567-JES-DDL
13                          Plaintiffs,
                                              **ORDER DENYING MOTION TO**
14  v.                                        **REMAND**
15  CAMP PENDLETON & QUANTICO
    HOUSING, LLC, et al.,                     **[ECF No. 62]**
16
                            Defendants.
17
18
19
20
21
22          Before the Court is Plaintiffs' Saint Brown ("Brown"), Christine Brown, and Minor
23  Plaintiffs B.B., T.B., L.B., and C.B. (collectively, "Plaintiffs") motion to remand for lack
24  of jurisdiction. ECF No. 62-2. Defendants filed an opposition and Plaintiffs filed a reply.
25  ECF Nos. 63, 65. On December 18, 2024, the Court heard oral argument on the matter and
26  ordered supplemental briefing. ECF No. 67. On January 3, 2025, Plaintiffs filed
27  supplemental briefing supporting their motion to remand. ECF No. 68. On January 17,
28

1

2025, Defendants filed an opposition to the supplemental briefing. ECF No. 69. For the reasons stated below, the Court **DENIES** Plaintiffs' motion to remand.

## I.    BACKGROUND

On January 30, 2023, in state court, Plaintiffs filed a complaint alleging multiple causes of action related to mold and water damage at their home, a 4 bed/2.5 bath two-story detached home with a fenced backyard at 1424 Orion Drive, San Diego, CA 92126 ("Orion Property") in the Capeharts West neighborhood within the boundaries of Marine Corps Air Station Miramar ("MCAS Miramar"). ECF No. 1 ¶¶ 1, 9. Defendant San Diego Family Housing, LLC ("SDFH") is the lessor of the housing, and Defendant Lincoln Military Property Management, L.P. ("LMPM," collectively "Defendants") is the property manager of the property. ECF No. 1 ¶ 3.

On March 30, 2023, Defendants removed the case to this Court. *See generally* ECF No. 1. In the Notice of Removal, Defendants asserted three independent bases for removal: (1) pursuant to 28 U.S.C. § 1331, because the events outlined in the complaint occurred within a federal enclave; and (2) under 28 U.S.C. § 1442(a)(1), because (a) SDFH is a federal agency; (b) and at all relevant times Defendants were acting under a federal officer. ECF No. 1 ¶¶ 4, 24-30.

Plaintiffs filed this motion to remand asserting that this Court lacks subject matter jurisdiction because the Orion Property is not on a federal enclave and Defendants are not a federal agency nor a federal officer. ECF No. 62-2.

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). In a case originally brought in state court, a defendant may remove the action to federal court if there is federal subject matter jurisdiction. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

"Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction." *Audo v. Ford Motor Co.*, No.: 3:18-cv-00320-L-KSC, 2018 WL 3323244, at *1 (S.D. Cal. July 6, 2018) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Therefore, the "burden of establishing that removal is proper" always lies with the defendant. *Gaus*, 980 F.2d at 566. If there is any doubt as to the propriety of removal, the court shall reject federal subject matter jurisdiction. *Id.*; *see also Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) ("If a district court determines at any time that less than a preponderance of the evidence supports the right of removal, it must remand the action to the state court.").

A federal court must have subject matter jurisdiction to properly adjudicate a dispute. The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If a court determines it lacks subject matter jurisdiction over a removed action at any stage of the proceedings, it must remand the action. *See Bruns v. NCUA*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for lack of subject matter jurisdiction "is mandatory, not discretionary."); *see* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

### III.    REQUEST FOR JUDICIAL NOTICE

Before addressing the merits of the motion to remand, the Court first considers requests for judicial notice by both parties. Defendants raise various evidentiary objections against many of Plaintiffs' exhibits.

#### A. Plaintiffs' Request for Judicial Notice

Plaintiffs request the Court take judicial notice of several facts: (1) that the Orion Property, falls on a portion of MCAS Miramar which is considered federal proprietary jurisdiction, not federal exclusive jurisdiction; (2) that the Jurisdiction Map of MCAS Miramar produced by the Department of the Navy's Naval Facilities Engineering Command pursuant to Defendants' *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (*"Touhy* request"), attached as Exhibit A is not subject to any reasonable dispute; and (3)

that the *Touhy* request submitted by Defendants to the Department of the Navy ("DoN"), attached as Exhibit B is not subject to any reasonable dispute. ECF No. 62-1 ("RJN").

Further, Plaintiffs request the Court take judicial notice of fifteen additional documents in their motion to remand, including the following:

(1)  Exhibit C to RJN and Exhibit 1 to the Declaration of Lenden Webb ("Webb Decl."), The Honorable Jeffery T. Miller's February 1, 2024, Order RE: Subject Matter Jurisdiction in *Childs v. San Diego Family Housing, LLC*, 714 F. Supp. 3d 1262 (S.D. Cal. Feb. 1, 2024);

(2)  Exhibit D to RJN and Exhibit 2 to the Webb Decl., The Supplemental Brief to the United States' Statement of Interest filed on December 18, 2023, in *Childs*;

(3)  Exhibit E to RJN and Exhibit 3 to the Webb Decl., Defendants' Notice of Removal filed in the instant case on March 30, 2023 (ECF No. 1);

(4)  Exhibit F to RJN and Exhibit 4 to the Webb Decl., Declaration of Daniel Turkin in Support of Defendants' Motion for Summary or Alternatively, Partial Summary Judgment (ECF No. 42-2);

(5)  Exhibit G to RJN, Declaration of Kristin Reyna Dehart in Support of Defendants' Motion for Summary Judgment or Alternatively, Partial Summary Judgment (ECF No. 42-4);

(6)  Exhibit H to RJN, Appellants' SDFH and LMPM's Opening Brief concerning the appeal of Judge Miller's February 1, 2024, Order RE: Subject Matter Jurisdiction in *Childs v. San Diego Family Housing, LLC*, filed in the Ninth Circuit Court of Appeals (Appellate Case No. 24-1256);

(7)  Exhibit I to RJN, Appellees' Answering Brief concerning Judge Miller's February 1, 2024, Order RE: Subject Matter Jurisdiction in *Childs v. San Diego Family Housing, LLC*, filed in the Ninth Circuit Court of Appeals (Appellate Case No. 24-1256);

(8)  Exhibit J to RJN, Order of Immediate Possession of Parcels (Civil No. 1333-SD) filed on March 3, 1952, in the United States District Court for the Southern

District of California, produced by the DoN in response to Defendants' *Touhy* request;

(9)   Exhibit K to RJN, an internal memo from James Frey, Staff Counsel for the State Lands Commission sent on September 9, 2009, concerning the jurisdictional status of various portions of MCAS Miramar;

(10)  Exhibit L to the Supplemental Request for Judicial Notice ("Supp. RJN"), Plaintiffs' December 20, 2024, *Touhy* request to the DoN's Naval Litigation Office;

(11)  Exhibit M to Supp. RJN, Declaration of Scott Van Slyke ("Van Slyke Decl."), Senior Land Surveyor for the Department of the Navy's Naval Facilities Engineering Systems Command, Southwest ("NAVFAC Southwest");

(12)  Exhibit N to Supp. RJN, Plaintiff Saint Brown's June 21, 2024, Freedom of Information Act ("FOIA") request;

(13)  Exhibit O to Supp. RJN, a signed letter from Samuel L. Provost confirming transmission of the relevant documentation pursuant to Brown's FOIA request;

(14)  Exhibit P to Supp. RJN, a Jurisdiction Map of MCAS Miramar, prepared by MCAS Miramar's Public Works Department, produced in response to Brown's June 21, 2024, FOIA request; and

(15)  Exhibit Q to Supp. RJN, Excerpts from the "2011 Jurisdiction Survey" for MCAS Miramar, including a table of contents, the Jurisdiction Summary, and three (3) maps of MCAS Miramar that correspond to the Jurisdiction Survey, produced in response to Brown's June 21, 2024, FOIA request.

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2).

Defendants object to the Court taking judicial notice of the findings of fact regarding the Orion Property and the Jurisdiction Map, including a zoomed-in version of the map

attached as Exhibit 8 to the Webb Decl., which the Court will discuss in more detail below. Defendants have not opposed Plaintiffs' request for judicial notice of the *Touhy* requests, attached as Exhibits B and L. The *Touhy* requests appear to be appropriate items for the Court to accept judicial notice. It appears that the accuracy of the source cannot be questioned, and the item can be accurately and readily determined from the source. For that reason, the request for judicial notice of Exhibits B and L is **GRANTED**.

Defendants also object to the Court taking judicial notice of Exhibits J, K, and M-Q. The Court will discuss the objections to the listed exhibits below.

Exhibit C is a recent decision relating to issues germane to this case, containing an opinion from within this district on federal enclave jurisdiction, although not for MCAS Miramar. "It is unnecessary to request the court judicially notice … cases from California and federal courts …. [T]he Court routinely considers such legal authorities in doing its legal analysis without a party requesting they be judicially noticed." *Lucero v. Wong*, No. C 10-1339 SI (pr), 2011 WL 5834963, at *5 (N.D. Cal. Nov. 11, 2001); *see also BP West Coast Prods., LLC v. May*, 347 F. Supp. 2d 898, 901 (D. Nev. 2004) (noting judicial notice is unnecessary for courts to "take a case into account as non-binding precedent.") Thus, the request for judicial notice is **DENIED** as moot.

Exhibits D, E, F, G, H and I are all filings by parties in the instant action (Exhibits E-G) or the *Childs* matter (Exhibits D, H and I). The Court takes judicial notice of the filing of each of these documents, but not the truth of the facts cited therein. A court may take judicial notice of the existence of matters of public record, such as a prior order or decision, but not the truth of the facts cited therein that are subject to reasonable dispute. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) (holding a court may take judicial notice of records and reports of administrative bodies). The requests for judicial notice of Exhibits D, E, F, G, H and I are **GRANTED**, subject to the limitations noted.

/ / /

## B. Defendants' Request for Judicial Notice

Defendants request the court take judicial notice of two documents: (1) Exhibit B to the Declaration of Kristin Reyna DeHart ("DeHart Decl."), which contains documents produced by the DoN in response to Defendants' *Touhy* request, relating to the history of Camp Kearny and how it became MCAS Miramar; and (2) Exhibit C to the Dehart Decl., which contains documents produced by the DoN in response to Defendants' *Touhy* request, relating to various parcel descriptions and acceptances of jurisdiction over multiple parcels of property comprising MCAS Miramar. ECF No. 63-2.

Further, in support of their Motion for Summary Judgment or Alternatively, for Partial Summary Judgment ("MSJ"), Defendants also requested the court take judicial notice of five documents relating to jurisdiction:

(1) Exhibit A-1, Excerpts from the Final Environmental Impact Statement for Military Family Housing in the San Diego Region, by NAVFAC, June 2004;

(2) Exhibit B-1, Excerpts from the Department of Defense ("DoD") Manual, DoD Housing Management, Number 4165.63-M, October 2010;

(3) Exhibit C-1, County Assessor/Recorder stamped maps and ownership information relating to MCAS Miramar;

(4) Exhibit D-1, United States Marine Corps map of the "Main Station" of Marine Corps Air Station Miramar obtained from the Marine Corps Community Services Miramar website, www.mcasmiramar.com, which includes the location of Plaintiffs' home on Orion Drive within the military installation just southwest of the North Gate;

(5) Exhibit E-1, Excerpts from the United States Marine Corps F-35B West Coast Basing Final Environmental Impact Statement, v.1, by NAVFAC, 2010;

Plaintiffs have not opposed Defendants' request for judicial notice of the documents received as a result of the *Touhy* request, attached as Exhibits B and C or Exhibits A-1 to E-1, filed in support of Defendants' MSJ. The documents from the *Touhy* request and Exhibits A-1 to E-1 appear to be appropriate items for the Court to accept judicial notice.

It appears that the accuracy of the source cannot be questioned, and the items can be accurately and readily determined from the source. For that reason, the request for judicial notice of Exhibits B and C and Exhibits A-1 to E-1 is **GRANTED**.

## C. Evidentiary Objections

The Court now addresses the various objections Defendants lodged to evidence and declarations submitted by Plaintiffs.

### 1. Declaration of Lenden Webb

Defendants generally object that the declaration lacks foundation and gives improper lay opinion testimony and fails to present adequate foundation for or substantiate his conclusions regarding jurisdiction of MCAS Miramar that Mr. Webb contends to be fact, solely based upon his review and assessment of certain documents. ECF No. 63-1. Defendants specifically object to paragraphs 8-10, and 12-20. *Id.* The Court will address Defendants' specific arguments below.

### a. Paragraph 8

In paragraph 8, it states:

> Plaintiffs reject each of these claims and contend that remanding the case to be litigated in state court is proper because: (1) the events alleged in the Complaint did not take place on a federal enclave and instead took place on a portion of Marine Corps. Air Station Miramar that falls under federal proprietary jurisdiction; (2) Defendants are not a federal agency; and (3) Defendants did not act under a federal officer. In essence, remanding the instant case is proper here for the same reasons the *Childs* case was remanded.

Webb Decl. ¶ 8.

Defendants object to this testimony as pure argument of counsel, a legal conclusion and lay opinion of counsel. ECF No. 63-1 at 4. The Court agrees. This paragraph offers no facts and is improper argument presented in an improper format. These substantive arguments would be properly included in a memorandum of points and authorities in support of or opposition to a motion, not a declaration. *See Oliver v. Hot Topic, Inc.*, No. 10cv1111 BEN (AJB), 2010 WL 4261473, at *1 (S.D. Cal. July 27, 2010); *see also*

8

*Roosevelt Irrigation District v. United States*, No. CV-15-00448-PHX-JJT, 2019 WL 1087939, at *4 (D. Ariz. Mar. 7, 2019) (precluding a witness from testifying as to the legal conclusion of whether the United States possessed a legal interest in certain property). The objection is **SUSTAINED**.

### b.  Paragraph 9

In paragraph 9, it states:

> The *Childs* case and the instant case involve the exact same Defendants, and an extremely similar fact pattern. Both cases involve military families that brought suit for injuries and damages alleged to have been caused, generally, by Defendants San Diego Family Housing, LLC and Lincoln Military Property Management, LP's negligence in the ownership, maintenance, and management of on-base housing. The only real distinction between the two (2) cases is that the *Childs* matter deals with Defendants' conduct at Coronado, while the instant case deals with Defendants' conduct at Marine Corps. Air Station Miramar ("MCAS Miramar").

Webb Decl. ¶ 9.

Defendants object to this testimony as pure argument of counsel, and as irrelevant to this case as to the federal enclave argument. ECF No. 63-1 at 5. The Court agrees. This is improper argument and inappropriate for this declaration. The objection is **SUSTAINED**.

### c.  Paragraph 10

In paragraph 10, it states:

> The issue of whether Defendants can properly assert jurisdiction based upon the federal agency or federal officer statutes was analyzed by the Hon. Judge Miller in detail in the *Childs* matter, and nothing about the instant case would impact that analysis in any way. Both cases involve the same entities, doing the same kind of work under the same operative agreements with the government. In short, Defendants were not held to be a federal agency, nor were they held to have acted under a federal officer, though this issue is now on appeal, it is notable that even the United States itself disagrees with Defendants' position concerning federal officer/agency jurisdiction. Plaintiffs agree with the Hon. Judge Miller's analysis of this issue and contend that the same should be upheld in the instant case.

Webb Decl. ¶ 10.

Defendants object to this testimony as pure argument of counsel, and as irrelevant to this case on the issues of exclusive federal jurisdiction at MCAS Miramar. ECF No. 63-1 at 6. The Court agrees. Once again, this is improper argument and inappropriate for this declaration. The objection is **SUSTAINED**.[1]

### d. Paragraph 12

In paragraph 12, it states:

> The question of what kind of jurisdiction applies the Brown family's former home at MCAS Miramar (1424 Orion Drive) was addressed to some extent in conjunction with Defendants' recently-filed Motion for Summary Judgment (Docket # 42). In support of their claim that 1424 Orion Drive rests on a federal enclave, Defendants submitted an Environmental Impact Statement for Military Family Housing, a copy of an excerpt from the Department of Defense Manual, a County Assessor/Recorder Map of MCAS Miramar, and a map of the "Main Station" of Marine Corps Air Station Miramar from the military base's website (Docket #42-4). Attached hereto as Exhibit "5", and as Exhibit "G" to the Request for Judicial Notice submitted concurrently herewith, is a true and correct copy of the Declaration of Kristin Reyna Dehart in Support of Defendants' Motion for Summary Judgment which contains the aforementioned documents as exhibits. These are the same documents submitted in support of Defendants' Notice of Removal (Docket # 1-2). However, conspicuously absent from any of the documentation Defendants submitted is any specific analysis of the jurisdictional make-up of MCAS Miramar, or any explanation of the boundaries between different types of jurisdiction on base. This defect is particularly notable when compared to the specificity and detail, as it relates to the question of jurisdiction, outlined in the documentation produced in support of the instant Motion.

Webb Decl. ¶ 12.

Defendants object to this testimony as pure argument of counsel, not appropriate for a declaration, and a pure legal conclusion. ECF No. 63-1 at 7. The Court agrees. This

---

[1] Defendants further object to this testimony because it contradicts the evidence based on a recent amicus brief filed by the United States. ECF No. 63-1 at 6. Considering that the Court is **SUSTAINING** the objection as improper argument, the remaining grounds for an objection are moot.

paragraph contains improper argument and is inappropriate for a declaration. The objection is **SUSTAINED**.

### e. Paragraph 13

Defendants object to lines 17-20 in paragraph 13. That section states:

> The remaining basis for Defendants' removal of the instant action is Defendants' contention that the events alleged in the Complaint took place on a federal enclave. However, this claim appears to be inaccurate based on additional documents our office has received pursuant to Defendants' own *Touhy* request.

Webb Decl. ¶ 13:17-20.

Defendants object to this testimony as pure argument of counsel. ECF No. 63-1 at 8. The Court agrees. These lines in paragraph 13 are improper argument and is inappropriate for a declaration. The objection is **SUSTAINED**.

### f. Paragraph 14

In paragraph 14, it states:

> In response to the *Touhy* request, the Department of the Navy's Naval Facilities Engineering Command produced a document entitled "Jurisdiction Map" which clearly indicates that the northeast portion of the MCAS Miramar – and specifically the Subject Property at 1424 Orion Drive, falls on a portion of MCAS Miramar held under Proprietary Jurisdiction. A true and correct copy of this Jurisdiction Map is attached hereto as Exhibit "7" and is incorporated herein by reference, and as Exhibit "A" to the Request for Judicial Notice submitted concurrently herewith. This Jurisdiction Map was thereafter produced to my office via download link from Defendants' counsel.

Webb Decl. ¶ 14.

Defendants object to this testimony on the grounds of hearsay, speculation and lack of foundation and personal knowledge as to the conclusions Mr. Webb draws from the documents and that it states a legal conclusion. ECF No. 63-1 at 9-11. The portion of this paragraph that states the map "clearly indicates that the northeast portion of the MCAS Miramar – and specifically the Subject Property at 1424 Orion Drive, falls on a portion of MCAS Miramar held under Proprietary Jurisdiction," is improper argument and

inappropriate for a declaration. The objection to this portion of paragraph 14 is **SUSTAINED**. The objection to the remainder of the paragraph is **OVERRULED**. The Court will address the objection to Exhibit A to RJN below.

### g. Paragraph 15

In paragraph 15, it states:

> Attached hereto as Exhibit "8" is a true and correct "zoomed-in" copy of the Jurisdiction Map (Exhibit "7") which provides a more clear view of the location of 1424 Orion Drive compared to the jurisdictional boundaries outlined on the map. Said differently office simply zoomed in on 1424 Orion Drive on the Jurisdiction Map, and took a screenshot for the Court's convenience – the screenshot is attached hereto as Exhibit "8".

Webb Decl. ¶ 15.

Defendant objects to this testimony and Exhibit 8 on the grounds that such statements alone are not sufficient to authenticate the map. The Court will address authentication of Exhibit 8 below.

### h. Paragraph 16

Defendants object to lines 15-18 in paragraph 16. That section states:

> As previously stated, while the *Childs* case relates to a property at Naval Amphibious Base Coronado (NAB Coronado), the issues on appeal in *Childs* are near identical to those at issue in the instant case. More specifically, the analysis of Defendants' assertion of federal officer jurisdiction and federal agency jurisdiction is the same between the two cases.

Webb Decl. ¶ 16:15-18.

Defendants object to this testimony as pure argument of counsel. The Court agrees. These two sentences contain improper argument and are not appropriate for a declaration. The objection is **SUSTAINED**.

### i. Paragraph 17

Defendants object to lines 23-26 in paragraph 17. That section states:

> As previously stated, while the *Child* case relates to a property at Naval Amphibious Base Coronado (NAB Coronado), the issues on appeal in *Childs* are near identical to those at issue in the instant case. More specifically, the

analysis of Defendants' assertion of federal officer jurisdiction and federal agency jurisdiction is the same between the two cases.

Webb Decl. ¶ 17:23-26.

Defendants object to this testimony as pure argument of counsel. The Court agrees. These two sentences contain improper argument and are not appropriate for a declaration. The objection is **SUSTAINED**.

### j.  Paragraph 18

In paragraph 18, it states:

On Friday October 25, 2024 my office received a copy of numerous additional documents produced by the Department of the Navy to Defendants pursuant to Defendants' *Touhy* request. Included in this production was (1) the Order of Immediate Possession of Parcels (Civil No. 1333-SD) filed on March 3, 1952 in the United States District Court for the Southern District of California; and (2) an internal memo from James Frey, Staff Counsel for the State Lands Commission sent on September 9, 2009 concerning the jurisdictional status of various portions of MCAS Miramar, and the attached "Navy supplied jurisdiction map: related to acquisitions by the United Staes for MCAS Miramar from 1939 onward. A true and correct copy of both these documents are attached hereto as Exhibit "11" and Exhibit "12" respectively, and are also attached to the Request for Judicial Notice submitted concurrently herewith as Exhibits "J" and "K".

Webb Decl. ¶ 18.

Defendants object to this testimony on the grounds of hearsay, speculation and lack of foundation and personal knowledge as to the conclusions Mr. Webb draws from the documents. ECF No. 63-1 at 13-15. The objection is **OVERRULED**, as Mr. Webb appears to lay the foundation as to how the documents were received, but the Court will separately address each of the mentioned documents below.

### k.  Paragraph 19

In paragraph 19, it states:

These documents further demonstrate that the 1424 Orion Drive falls on a portion of MCAS Miramar held under proprietorial jurisdiction. The Complaint in Condemnation (Civil No. 1333) was filed on March 3, 1952,

and is referenced in all relevant jurisdictional maps as the method by which the United States acquired the land on which 1424 Orion Drive is located (*see the jurisdictional maps attached hereto as Exhibit "7" and Exhibit "12"*). This is important because in 1951, California enacted a statute stating that "the Legislature of California consents to the acquisition by the United States of land within this State and upon and subject to" a series of "express conditions and reservations," including that "[t]he United States must in writing have assented to acceptance of jurisdiction over the land upon and subject to" those "condition and reservations," and that "the State Lands Commission" must have found the conditions to be satisfied "and declared that [the] acquisition is in the interest of the State." (1951 Cal. Stat. ch. 875, § 1).

Webb Decl. ¶ 19.

Defendants object to this testimony on the grounds of hearsay, speculation, lack of foundation and personal knowledge as to the conclusions Mr. Webb draws from the documents. ECF No. 63-1 at 16-18. Defendants further object that this testimony states a legal conclusion and is pure argument of counsel. *Id.* The Court agrees. This testimony contains improper argument regarding the jurisdictional status of the Orion Property and is not appropriate for a declaration. The objection is **SUSTAINED**.

### l. Paragraph 20

In paragraph 20, it states:

The 2009 memo from the State Lands Commission further demonstrates that the land falls under proprietorial jurisdiction, both as directly stated in the first paragraph of Mr. Frey's memorandum, and as demonstrated in the attached maps and tables. While certain plots of land are listed in the "Federal Jurisdiction" table as being under "partial" jurisdiction, the land acquired by Civil No. 1333 is not listed, and is instead lumped into the "Remainder" row of the table, for which the degree of jurisdiction listed is "Proprietorial Interest Only".

Webb Decl. ¶ 20.

Defendants object to this testimony on the grounds of hearsay, speculation and lack of foundation and personal knowledge as to the conclusions Mr. Webb draws from the documents. ECF No. 63-1 at 19. Defendants further object that this testimony is speculative, conclusory, makes a legal conclusion and is pure argument of counsel. *Id.* at

20-21. The Court agrees. This testimony is improper argument which is inappropriate for a declaration. The objection is **SUSTAINED**.

### 2. Findings of Fact

Defendants object to the Plaintiffs' request for judicial notice of the following fact: the Orion Property, falls on a portion of MCAS Miramar which is considered federal proprietary jurisdiction, not federal exclusive jurisdiction. Defendants' objection is **SUSTAINED** and the request for judicial notice of this alleged fact is **DENIED** since the proposed fact is subject to "reasonable dispute" between the parties. *See Lee*, 250 F.3d at 688.

### 3. Exhibit A – Jurisdiction Map

Defendants object to the Jurisdiction Map, and a zoomed-in version, attached as Exhibit 8 to the Webb Decl. on the grounds that Plaintiffs have not properly authenticated the map. ECF No. 63-1 at 3. Further, Defendants argue that the Van Slyke Decl. is insufficient to authenticate the map. ECF No. 69 at 3. The Van Slyke Decl. is "silent on when exactly the map was prepared … what was relied upon to prepare it, whether it was accurate as of th[e] time it was prepared, [and] whether it is still accurate as of today." *Id*. Defendants correctly argue that the Van Slyke Decl. does not address the map's origins or accuracy. *Id*. The declaration is eight paragraphs in length, but only three paragraphs address the map and state as follows:

> I am generally familiar with the types of records and documents that the NAVFAC Southwest Cadastral Department maintains with regard to its official responsibilities, including maps.

> The document attached hereto as Exhibit A is a true and correct copy of a document entitled "JURISDICTION MAP" of "Naval Air Station, Miramar, California" (such installation today is identified as Marine Corps Air Station Miramar (MCAS Miramar)), prepared by the Department of the Navy, Naval Facilities Engineering Command.

> The document attached hereto as Exhibit A is a DON official record kept in the regular course of the DON's business.

Van Slyke Decl. ¶ 5-7.

Plaintiffs argue that their December 20, 2024, *Touhy* request, along with the Van Slyke Decl., the signed letter from Samuel Provost, the MCAS Miramar Jurisdiction Map, prepared by the Public Works Department for MCAS Miramar, and various excerpts from the 2011 Jurisdiction Survey are sufficient supporting documentation providing sufficient grounds for this Court to take judicial notice of the Jurisdiction Map. ECF No. 68 at 2. Further, Plaintiffs have repeatedly argued the similarities of this case and the *Childs* case.

In *Childs*, the United States Government intervened and argued that the disputed property was not within a federal enclave. *Childs*, 714 F. Supp. 3d at 1268. In support of their argument, the United States submitted a parcel map and a lengthy declaration of Lonie Cyr, a Senior Land Surveyor at NAVFAC Southwest in support of its parcel map. *Id*. at 1269. In his declaration, Mr. Cyr provided a detailed historical analysis of the jurisdictional status of NAB Coronado and averred that he had the "authority and responsibility for managing United States Navy and Marine Corps land interests," and reviewed "United States Navy and California State Lands Commission documents." *Id*. Nonetheless, the Court sustained an objection to the parcel map submitted because the Government did not provide any indication of the map's origin and as a result the Court could not "readily determine the accuracy of the information contained in th[e] map—and cannot simply assume th[e] information to be true." *Id*. at 1270.

First, of the documents Plaintiffs cite to support the Court taking judicial notice of the Jurisdiction Map, only the Van Slyke Decl. discusses the Jurisdiction Map. The other documents do not mention the Jurisdiction Map and have no effect on the Court's decision to take judicial notice of the document. In addition, there are questions of reliability with several of the cited documents, which the Court will address below. The Court will therefore focus its attention to the Van Slyke Decl.

The Van Slyke Decl. includes far less information than the declaration in *Childs*. The Van Slyke Decl. does not describe Mr. Van Slyke's personal knowledge of the Jurisdiction Map, nor its origin. At most, Mr. Van Slyke's declaration provides that the

map is currently present in NAVFAC's files. However, the declaration is lacking any sufficient basis for the Court to take judicial notice of the map or its contents. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) (overruled District Court's taking judicial notice of facts within a document where the accuracy and interpretation of the facts remained in dispute); *see also Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 699 F. Supp. 3d 1086, 1102-03 (D. Or. 2023) (declining to take judicial notice of map where court could not assume accuracy of information contained within it) Therefore, Defendants' objection is **SUSTAINED** and Plaintiffs' request for judicial notice is **DENIED**.

### 4. Exhibit J – Order of Immediate Possession of Parcels

Defendants object to the Order of Immediate Possession of Parcels, on the grounds that Plaintiffs have not authenticated the items, nor provide lay opinion testimony on the meaning of the items, hearsay and lack of personal knowledge regarding the creation of the items. ECF No. 63-1 at 2-3, 13-15.

The Order of Immediate Possession of Parcels was received from the DoN in response to Defendants' *Touhy* request. A court may take judicial notice of the existence of matters of public record, but not the truth of the facts cited therein that are subject to reasonable dispute. *See Lee*, 250 F.3d at 689-90; *see also Interstate Natural Gas Co.*, 209 F.2d at 385 (holding a court may take judicial notice of records and reports of administrative bodies). When a court takes judicial notice of a public record, "it may do so not for the truth of the facts recited therein, but for the existence of the [record], which is not subject to reasonable dispute over its authenticity." *Malheur Forest Fairness Coalition*, 699 F. Supp. 3d at 1102 (internal citations and quotations omitted). The objection is **OVERRULED** and the request for judicial notice of Exhibit J is **GRANTED**, subject to the limitations noted.

### 5. Exhibit K – Internal Memo from James Frey

Defendants object to the Internal Memo from James Frey, on the grounds that Plaintiffs have not authenticated the items, nor provide lay opinion testimony on the

meaning of the items and has no personal knowledge regarding the creation of the items. ECF No. 63-1 at 2-3, 13-15. Further, Defendants note that the internal memo from Mr. Frey contains speculation and hearsay as Mr. Frey calls out discrepancies in the documents and maps from the Navy with acquisition documents relating to Camp Kearny. ECF No. 63-1 at 14-15.

In the internal memo, James Frey, staff counsel at the California State Lands Commission, sent an email to a Captain Crosswell. The email was dated September 9, 2009, and had several jurisdiction maps attached to it. The memo and attached documents were received from the DoN in response to Defendants' *Touhy* request. As mentioned above, a court may take judicial notice of the existence of matters of public record, but not the truth of the facts cited therein that are subject to reasonable dispute. *See Lee*, 250 F.3d at 689-90. The objection is **OVERRULED** and the request for judicial notice of Exhibit K is **GRANTED**, subject to the limitations noted.

### 6. Exhibit M – Declaration of Scott Van Slyke

Defendants object to the declaration of Mr. Van Slyke as hearsay, arguing that Plaintiffs failed to submit any evidence showing that the declaration of Mr. Van Slyke was received specifically in response to their *Touhy* request. ECF No. 69-2 at 6. Further, Defendants argue that the declaration lacks foundation and sufficient support for Mr. Van Slyke's credentials, does not include any curriculum vitae with his declaration, nor does he stamp it with his land surveyor's stamp, nor does he include his license number or any description of his duties and responsibilities for NAVFAC. *Id*. at 6-7.

The Court notes the issues that Defendants have cited and as discussed above, the declaration is lacking sufficient foundation for the Jurisdiction Map. However, the declaration appears to be from the personal knowledge of Mr. Van Slyke and is sufficient to establish generally that he is employed by the DoN as a Senior Land Surveyor at NAVFAC Southwest for the stated length of time and for Plaintiffs' filing of a *Touhy* request. Defendants' objections to that information are, therefore, **OVERRULED** and the request for judicial notice is **GRANTED**.

However, to the extent that Mr. Van Slyke is familiar with the "types of records and documents that NAVFAC Southwest maintains with regard to its official responsibilities, including maps," as well as references to the Jurisdiction Map lack the proper foundation. "Personal knowledge may be inferred from declarations that concern areas within the declarant's job responsibilities." *Silva v. AvalonBay Cmtys., Inc.*, No. LA CV15-04157 JAK (PLAx), 2015 WL 11422302, at *4 n.1 (C.D. Cal. Oct. 8, 2015). Here, Mr. Van Slyke does not aver how in his current position he would have access to documents that NAVFAC Southwest maintains, nor how he would have knowledge of and access to the Jurisdiction Map. As to the remainder of his declaration related to those issues and the type of jurisdiction over the parcel of land on which the Orion Property sits, Defendants' objections are **SUSTAINED**.

### 7. Exhibit N – Plaintiff Saint Brown's Freedom of Information Act Request

Defendants object to this exhibit as lacking personal knowledge, since there was no declaration from Plaintiff Saint Brown that he submitted this request. ECF No. 69-2 at 9. Defendants also argue that Brown did not make an official FOIA request, based on the requirements for such a request. *Id*. The Court agrees, Mr. Webb lacks personal knowledge as to the FOIA request. However, in Brown's declaration submitted in support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, Brown stated that he submitted a FOIA request and would provide the documents from the request to his attorney as soon as he received them. Declaration of Saint Brown in Opposition to Defendant's Motion for Summary Judgment; ECF No. 48-2 ¶ 10 ("Brown Decl."). Based on the testimony of Brown, that is sufficient for the Court to infer Brown possesses relevant personal knowledge as to the FOIA request and any documents received as a result of the FOIA request. Defendants' objection is **OVERRULED** and the request for judicial notice is **GRANTED**.

### 8. Exhibit O – Letter from Samuel Provost

Defendants object to this exhibit as lacking personal knowledge and that the document was not properly authenticated. ECF No. 69-2 at 9. The documents were

addressed to Brown and were received pursuant to Brown's FOIA request. Since there is sufficient personal knowledge regarding Brown's FOIA request, as stated above, and the letter is from a government agency, the objection is **OVERRULED** and the request for judicial notice is **GRANTED**.

### 9. Exhibit P – Jurisdiction Map from 2014

Defendants object to this exhibit on the grounds of hearsay, lack of foundation and personal knowledge of Mr. Webb as to the FOIA request and what was received or not received in response to it. ECF No. 69-2 at 10. Defendants also object that the documents are not properly authenticated. *Id*. As stated above, the documents were received as a result of Brown's FOIA request, and the documents appear to be a public record. A court may take judicial notice of the existence of matters of public record, but not the truth of the facts cited therein that are subject to reasonable dispute. *See Lee*, 250 F.3d at 689-90. The objection is **OVERRULED** and the request for judicial notice is **GRANTED**.

### 10. Exhibit Q – 2011 Jurisdiction Survey

Defendants object to the 2011 Jurisdiction Survey on the grounds of hearsay, and lack of foundation and personal knowledge. ECF No. 69-2 at 11. For the same reasons as stated regarding Exhibit P, the objection is **OVERRULED** and the request for judicial notice is **GRANTED**.

## IV.    LEGAL ANALYSIS

Defendants argue this Court has federal subject matter jurisdiction on three bases. First, Defendants contend this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because the events alleged in Plaintiffs' complaint occurred on a federal enclave. ECF No. 1 ¶ 4. Second, Defendants contend this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1442, because SDFH and LMPM were, at all relevant times, (a) acting under a federal officer, and (b) because SDFH is a federal agency. *Id*. ¶¶ 24-30.

/ / /

/ / /

**A. Federal Enclave Doctrine**

A federal enclave is land over which the federal government exercises exclusive legislative jurisdiction. *See Paul v. United States*, 371 U.S. 245, 263-64 (1963); *United States v. Jenkins*, 734 F.2d 1322, 1326 (9th Cir. 1983). Article I, section 8, clause 17 of the United States Constitution grants the federal government power "[t]o exercise exclusive Legislation … over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings." U.S. Const., Art. I, § 8, cl. 17. A federal enclave is created where the federal government acquires land by purchase or condemnation with the consent of the state or commonwealth in which the land is located. *See Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369, 371-72 (1964). Federal enclaves include "numerous military bases, federal facilities, and even some national forests and parks." *Azhocar v. Coastal Marine Servs., Inc.*, No. 13-CV-155 BEN (DHB), 2013 WL 2177784, at *1 (S.D. Cal. May 20, 2013) (quoting *Allison v. Boeing Laser Technical Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012); *see also* U.S. Const. art. I, § 8, cl. 1).

For land acquired by the United States after 1940, the Act of October 9, 1940, 40 U.S.C. § 255 (re-codified as 40 U.S.C. § 3112) applies. *See Childs*, 714 F. Supp. 3d at 1271. Under the Act, "United States agencies and authorities may accept exclusive or partial jurisdiction over lands acquired by the United States by filing a notice with the Governor of the state on which the land is located or by taking other similar appropriate action." *Adams v. United States*, 319 U.S. 312, 313 (1943); *see also United States v. Cassidy*, 571 F.2d 534, 536 (10th Cir. 1978) ("As to lands acquired by the United States *after* 1940, it has been held that the United States does not acquire jurisdiction over lands acquired by it unless it gives notice of acceptance.").

**1. MCAS Miramar**

Defendants contend that MCAS Miramar and the Orion Property are on a federal enclave. Plaintiffs contend that the Orion Property is on a parcel of MCAS Miramar that is considered proprietary jurisdiction. Plaintiffs primarily rely on the Jurisdiction Map

(Exhibit A to RJN) to support their position, but for the reasons discussed above, the Court declines to take judicial notice of the map and does not consider it. The Court will now analyze the remaining evidence available to determine the jurisdictional status of the Orion Property.

Defendants argue that Plaintiffs attached several maps to their motion and did nothing to research or attempt to cross-check the attached maps against the numerous acquisition documents' property descriptions to confirm that the maps were correctly drawn or evaluate whether more reference documents would be needed to do so. ECF No. 63 at 6. Defendants further argue that the origins and purposes of the maps Plaintiffs present are unclear as the maps were among several hundred pages of reports and documents produced by the DoN. *Id*. Additionally, Defendants argue that NAVFAC has authored two reports, in 2004 and 2010, and via the established history of Camp Kearny on which the Court has relied several times to conclude that MCAS Miramar is under exclusive legislative jurisdiction. *Id*. at 7.

Plaintiffs contend that the Orion Property is on a parcel of MCAS Miramar that is considered proprietary jurisdiction based on documents obtained after a *Touhy* request by both parties. ECF No. 62-2 at 11. Additionally, Plaintiffs argue that the Order of Immediate Possession of Parcels (Exhibit J to RJN) proves that the Orion Property is on a parcel of MCAS Miramar that was purchased in 1952 and no notice of acceptance per 40 U.S.C. § 3112 has ever been produced in the instant case. ECF No. 62-2 at 12; Exhibits A, J, K to RJN.

Further, Plaintiffs argue that the documentation Defendants have submitted in this case regarding the issue of jurisdiction at MCAS Miramar is silent as to the specific parcel at issue in this case. ECF No. 62-2 at 13. Plaintiffs also argue that NAVFAC Environmental Impact Studies and prior cases cited by Defendants do not address the parcel of land that the Orion Property sits on MCAS Miramar. ECF No. 65 at 2. Further, Plaintiffs argue that the letter and attachments from James Frey support the conclusion that the portion of MCAS Miramar on which the Orion Property lies was acquired in 1952. *Id*. at 4. Lastly,

Plaintiffs argue that the additional documentation produced pursuant to Plaintiffs' FOIA request, a jurisdiction map of MCAS Miramar prepared by MCAS Miramar's Public Works Department on September 26, 2014 (Exhibit P to Supp RJN); and a Jurisdiction Summary and the table of contents of a 2011 Jurisdiction Survey performed at MCAS Miramar with corresponding maps of MCAS Miramar (Exhibit Q to Supp RJN) support Plaintiffs' assertion that the Orion Property lies on a portion of MCAS Miramar that is proprietary jurisdiction. ECF No. 68 at 6.

In response to the 2009 email from James Frey, Defendants argue that the email indicates that there is a discrepancy between the Camp Kearny records and the maps on which Plaintiffs try to rely. *Id*. at 7-8. Defendants also argue that Mr. Frey speculates as to land acquisitions in his email, but there is no evidence to support his statement that the property was sold at some point and then re-purchased later. *Id*. at 8. The Court agrees. Additionally, Defendants argue that the Court should take NAVFAC's written pronouncement in 2010, a year after Mr. Frey's letter, as the best evidence from the Navy on the jurisdictional status of MCAS Miramar. *Id*.

The Order of Immediate Possession of Parcels, Civil No. 1333, indicates that large swaths of land were purchased in 1952. Exh. J To RJN; ECF No. 62-1 at 610-624. However, throughout the document, there are paragraphs that appear to be crossed out, with an "x" through them. *See generally* ECF No. 62-1 at 614, 617, 623-624. It is unclear who crossed out these paragraphs, why they were crossed out and the effect of crossing them out. Without any information, it is difficult for the Court to draw any conclusions from this document. Further, the information provided in the 2011 Jurisdiction Survey states Civil No. 1333 was acquired in 1953. Exh. Q to Supp. RJN Additionally, several of the maps submitted with the memo from James Frey notes that a declaration of taking, dated November 19, 1952, April 13, 1953, and June 15, 1953, was submitted for Civil No. 1333, which conflicts with other maps among the maps attached to James Frey's memo, as several maps indicate that only a small portion of MCAS Miramar is under exclusive federal jurisdiction. Exh. K to RJN at 629, 633, 637.

Additionally, the third map in the 2011 Jurisdiction Survey contradicts the first two maps, and the maps attached to James Frey's letter. The third map depicts that land shown as proprietary jurisdiction in the first two maps, and the maps attached to James Frey's letter are actually federal exclusive jurisdiction. Exh. Q to Supp. RJN at 3. There is no discussion as to when any of these maps were created, who created them or the accuracy of the maps, including the map in Exhibit P to Supp. RJN. The third map also disputes maps from the Order of Immediate Possession of Parcels, Civil No. 1333 (Exh. J to RJN). The documents themselves create a reasonable dispute regarding their accuracy. Although the Court took judicial notice of the documents generally, the Court does not take judicial notice of the contents of the maps for the stated reasons. *See Malheur Forest Fairness Coal.*, 699 F. Supp. 3d at 1102. Since the maps contradict themselves, the Court cannot draw any conclusions from any of the maps regarding the jurisdictional status of the Orion Property and does not consider any of the maps in its evaluation of the jurisdictional status of the Orion Property.

Next, the Court considers the email from James Frey. In the email from James Frey, Mr. Frey discussed five acquisitions of land by the United States between 1939 and 1943 and letters of acceptance for each acquisition. Exh. K to RJN. Mr. Frey then stated that a Navy supplied jurisdiction map concurs on those acquisitions and showed the degree of jurisdiction to be proprietorial. *Id*. Mr. Frey was unable to give dates of the acquisitions as he said they were not provided. *Id*. Mr. Frey then acknowledged a discrepancy between the jurisdiction maps he attached, the acquisition history and the establishment of Camp Kearny in the World War I era. *Id*. Mr. Frey then speculated that the United States sold the World War I lands at some point and then reacquired them during World War II, but does not provide any records or documentation to support that statement that the land was sold and later re-purchased. *Id*. However, Mr. Frey does confirm that he's "researched the [State Land] Commission's files for jurisdiction at Miramar [and] [o]ur file shows that historically Camp Kearny was located at or near the present facility during WWI and recites that the United States has owned the property since that era." *Id*. Mr. Frey's email and the

attached documents fail to show that the Orion Property is on a portion of land that is subject to proprietary jurisdiction.

The Court now considers the remaining documents submitted by the parties and prior court decisions regarding the jurisdictional history of MCAS Miramar. The Court agrees with Defendant that the NAVFAC authored reports, in 2004 and 2010, and prior court decisions regarding the jurisdictional history of MCAS Miramar support Defendants' position that MCAS Miramar and the Orion Property are part of a federal enclave. *See* ECF No. 42-4 at 57 ("MCAS Miramar is considered to be under exclusive legislative jurisdiction.").

The Court addressed the ownership history of MCAS Miramar in *Doe v. Camp Pendleton & Quantico Housing, LLC*, No. 20-cv-224-GPC-AHG, 2020 WL 1890576 (S.D. Cal. Apr. 16, 2020). That case involved facts similar to those at issue here, and the same defendants and counsel as appear in this case. The Court now repeats the ownership history of MCAS Miramar from *Doe* and the attached exhibits in this action.

Camp Kearny was established July 18, 1917, named in honor of General Stephen Watts Kearny who led the Army of the West to San Diego in 1846. ECF No. 63-5 at 4. The historical record shows that the DoN purchased Camp Kearny, "the land that ultimately became MCAS Miramar," in February 1931. *Doe*, 2020 WL 1890576, at *5. In 1917, the War Department leased Camp Kearny, and while most of the Camp's buildings were destroyed or salvaged in the 1920s, the property continued to be used by the Marines through the 1930s. *Id.*; DeHart Decl., Exh. B at 9, 13. Defendants have sufficiently established that the federal government purchased MCAS Miramar in 1931 and therefore exercises ownership over the property, including the Orion Property.

There are a host of cases throughout the circuit, where the court has found that MCAS Miramar is a federal enclave. *See Naigan v. Nana Services, LLC*, No. 12cv2648-LAB (NLS), 2013 WL 5278641, at *1 (S.D. Cal. Sept. 18, 2013) ("MCAS Miramar was established as a federal enclave no later than July 17, 1943."); *see also Jimenez v. Haxton Masonry, Inc.*, No. 18-cv-07109-SVK, 2020 WL 3035797, at *4 (N.D. Cal. June 5, 2020)

(MCAS Miramar was established as a federal enclave in 1943). In each of these cases, the parties stipulated to the date of establishment of MCAS Miramar as a federal enclave. Based on the exhibits filed in this case, the Court finds that MCAS Miramar and the Orion Property are on a federal enclave and have been a federal enclave since 1931.

"Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). "In determining whether a claim arises on a federal enclave, courts have simply looked to see where all the 'pertinent events' took place." *Rosseter v. Industrial Light & Magic*, No. C 08-04545 WHA, 2009 WL 210452, at *2 (N.D. Cal. Jan. 27, 2009) (citing *Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1148 (S.D. Cal. 2007)). Here, all of the pertinent alleged events took place on the Orion Property and therefore, the Court finds that it properly exercises federal question jurisdiction over Plaintiffs' claims.

## V.    FEDERAL OFFICER

Defendants also argue that this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1442, because SDFH and LMPM were, at all relevant times, acting under a federal officer, and because SDFH is a federal agency. Since the Court has determined that it may properly exercise jurisdiction, as discussed above, the Court declines to conduct an analysis under these additional theories of subject matter jurisdiction.

## VI.    CONCLUSION

For the reasons stated above, the Court finds that the Orion Property located on MCAS Miramar is under a federal enclave and the Court has federal subject matter jurisdiction over this matter. Plaintiffs' motion to remand this matter to state court is **DENIED**.

/ / /

/ / /

/ / /

/ / /

1    **IT IS SO ORDERED**.

2    Dated:  March 21, 2025

Honorable James E. Simmons Jr.
United States District Judge